IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ESTHER SUNDAY EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12-CV-1249 |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

Plaintiff Esther Sunday Edwards brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income. The Court has before it the certified administrative record and cross-motions for judgment.

### **I. PROCEDURAL HISTORY**

Ms. Edwards filed an application for supplemental security income in February of 2010 contending she became disabled on January 12, 2005. (Tr. at 152-58, 174.)[2] The application was denied initially and upon reconsideration. (*Id.* at 47-75.) Ms. Edwards

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the administrative record.

requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 108.) After a hearing, the ALJ determined that Ms. Edwards was not disabled under the Act. (*Id.* at 76-91.) The Appeals Council denied a request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 4-8.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Ms. Edwards is disabled but whether the Commissioner's finding that Ms. Edwards is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established five-step sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ

2

determined at step one that Ms. Edwards had not engaged in substantial gainful activity since February 19, 2010, the date the application was filed. (Tr. at 81.) The ALJ next found at step two that Ms. Edwards had the following severe impairments: hypertension, status post rotator cuff repair, asthma, carpal tunnel syndrome ("CTS"), hypothyroidism, diabetes mellitus, obesity, depression, and anxiety. (*Id.*) At step three, the ALJ found that Ms. Edwards did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.*) The ALJ then determined that Ms. Edwards retained the Residual Functional Capacity ("RFC") to perform light work with the following additional limitations: occasional climbing of ramps and stairs; occasional balancing; no climbing of ropes, ladders, and scaffolds; no concentrated exposure to hazards, fumes, dusts, gases, and poor ventilation; no repetitive reaching overhead; and frequent handling and fingering. (*Id.* at 83.) The ALJ also limited Ms. Edwards to simple, routine repetitive tasks, in a low-production environment subject to only routine changes, and without public contact. (*Id.*) At the fourth step, the ALJ determined that Ms. Edwards had no past relevant work. (*Id.* at 87.) At step five, the ALJ determined that there were jobs which Ms. Edwards could perform consistent with her RFC, age, education, and work experience. (*Id.* at 87-88.)

## IV. ISSUES AND ANALYSIS

Ms. Edwards contends that the ALJ's RFC finding and credibility determination were flawed because the ALJ failed to properly account for her shoulder, wrist and

knee/leg pain, and failed to consider all the relevant regulatory factors. She also contends that the ALJ erred further by failing to mention in her decision all of Ms. Edwards' moderate limitations and to include them in the RFC as well as the hypothetical question to the Vocational Expert ("VE").

### A. The ALJ's RFC and Credibility Determinations Are Supported by Substantial Evidence.

Ms. Edwards challenges the ALJ's conclusions at Step 2 that Ms. Edwards' statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the RFC, specifically as that finding relates to her right shoulder, her CTS, and her left knee/leg.

The "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981). The "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." *Hines*, 453 F.3d at 562-63. An ALJ need not discuss every piece of evidence in determining the RFC. *See, e.g.*, *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995); *Matney v. Colvin*, No. 1:09–CV–229, 2013 WL 1788590, *3 (M.D.N.C. April 26, 2013). What is required is "an accurate and logical

bridge from the evidence to [the] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *Matney*, 2013 WL 1788590, at *3.

As for the question of a claimant's credibility, in *Craig v. Chater*, the Fourth Circuit provides a two-part test for evaluating a claimant's statements about symptoms. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" 76 F.3d at 594 (citing 20 C.F.R. §§ 416.929(b) and 404.1529(b)) (internal alterations omitted). Second, if the ALJ determines that such an impairment exists, the second part of the test then requires her to consider all available evidence, including the plaintiff's statements about her pain, in order to determine whether the plaintiff is disabled. *Craig*, 76 F.3d at 595-96.

While the ALJ must consider the plaintiff's statements and other subjective evidence at step two, she need not credit them to the extent they conflict with the objective medical evidence or to the extent that the underlying impairment could not reasonably be expected to cause the symptoms alleged. *Id.* at 596. Relevant evidence for this inquiry includes the plaintiff's "medical history, medical signs, and laboratory findings," *id.* at 595, as well as various regulatory factors.[3] The regulations do not

---

[3] The regulatory factors are: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate her pain or other symptoms; (v) treatment, other than

5

mandate that the ALJ discuss all these factors in her decision. *See, e.g.*, *Baggett v. Astrue*, No. 5:08–CV–165–D, 2009 WL 1438209, at *9 (E.D.N.C. May 20, 2009) (unpublished) (noting that the law requires "that the ALJ consider these factors, not that [s]he discuss each of them").

### i. Shoulder Pain

Substantial evidence supports the ALJ's conclusion that Ms. Edwards' right shoulder pain was well-controlled after she underwent a shoulder manipulation under anesthesia to address her shoulder pain. As the ALJ noted, soon after the surgery, at a follow-up visit with Triangle Orthopaedic, Ms. Edwards had an improved range of motion and reduced pain, her right shoulder had no appreciable tenderness, and she could place her right hand behind her head. (Tr. at 627.) On March 15, 2011, Ms. Edwards reported that her pain was much better and that while she "ha[d] some pain with motion," she was happy overall. (*Id.* at 630.) The ALJ incorporated Ms. Edwards shoulder impairment in the RFC by prohibiting her from repetitive overhead reaching. (*Id.* at 83, 85-86.) This is substantial evidence supporting the ALJ's findings and conclusions.

### ii. Carpal Tunnel Syndrome

In early April 2010, Ms. Edwards was diagnosed with CTS of the right wrist at Durham Regional Hospital and was prescribed a splint. (Tr. 379-80.) In August 2010, an

---

medication, the claimant receives or has received for relief of her pain or other symptoms; (vi) any measures the claimant uses or has used to relieve her pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

EMG study revealed that she had moderate CTS with no evidence of axonopathy and she received an injection. (*Id.* at 424.) State agency physician Dr. Juan Alva examined Ms. Edwards in August 2010. (*Id.* at 418.) While he notes that Ms. Edwards' CTS caused some diminishment of her range of motion, that range of motion was still within the normal range; similarly, while there was some decrease in grip strength, her ability to pinch, grasp and manipulate objects was normal, despite her CTS. (*Id.* at 418, 420-21.) The ALJ ultimately incorporated Ms. Edwards' CTS impairment in her right wrist by limiting her to no more than frequent handling and fingering. (*Id.* at 83, 85-86.) Ms. Edwards has pointed to nothing in Dr. Alva's report that is inconsistent with the ALJ's RFC limitation, and it is clear the ALJ considered Dr. Alva's report because he explicitly mentioned it in connection with Ms. Edwards' obesity and hypertension. (*Id.* at 85.) The studies and Dr. Alva's report provide substantial evidence to support the ALJ's findings and conclusions about her CTS.

### iii.   Knee/Leg Pain

As for Ms. Edwards' allegation of left knee pain, evidence for the treatment of that knee during the relevant period reveals a knee injection at some point in 2011 (Tr. at 469) and that she presented to Triangle Orthopaedic in January 2011 complaining of knee pain. (*Id.* at 623.) At that appointment, which revealed she had "left knee arthritis," Ms. Edwards had full range of motion. (*Id.*) Her left knee also had mild swelling, there was some tenderness and a positive McMurray, but no erythema or ecchymosis and x-rays of

her knee were normal. (*Id.*) Ms. Edwards received an injection. (*Id.*) Beyond that, the longitudinal record indicates that Ms. Edwards had a normal gait and could walk without difficulty (*id.* at 238, 359, 367, 418), had good movement (*id.* at 572, 586, 592), normal leg strength (*id.* at 238, 367), no leg swelling (*id.* at 238, 245, 247-48, 250, 358, 360, 374, 443, 570, 572, 586, 592) good pulse (*id.* at 358, 360, 374, 386, 572, 586, 592), no tenderness (*id.* at 238, 374, 386, 570), and good range of motion (*id.* at 360, 368).

In her January 20, 2012 decision, the ALJ noted that Ms. Edwards presented at the October 5, 2011 hearing wearing a compression bandage around her knee and that she testified that she had problems with her left knee that require injections and that she could only stand for ten to fifteen minutes at a time. (*Id.* at 84.) The ALJ also noted that Ms. Edwards presented with a one-prong cane and testified that she had to use a motorized cart when grocery shopping. (*Id.*) However, the ALJ also pointed out that Ms. Edwards initially reported walking three miles per day for exercise after being diagnosed with diabetes in 2010. (*Id.* at 86 referencing Tr. 401-02.) The ALJ ultimately limited Ms. Edwards to the performance of light work with the numerous additional exertional and non-exertional limitations mentioned above. All this evidence undercuts Ms. Edwards' assertion that pain associated with her left knee or leg—or any other issues with her knees or legs—limited her beyond the restrictions set forth in the RFC and provides substantial evidence for the ALJ's findings and conclusions.[4]

---

[4] Ms. Edwards also faults the ALJ for failing to consider her leg pain and swelling of the knee in conjunction with her obesity at step two of the sequential evaluation process. (Doc. 11 at

8

### iv. Other Evidence

Other evidence supports the ALJ's decision. First, Ms. Edwards' daily activities undermine her claim that she has disabling limitations or disabling pain. From 2008 through at least the middle of 2010, she cared for her grandchildren. (Tr. 86, 236, 348 (December 2008 report of great stress from caring for six grandchildren), 382, 445 (June 2010 report of caring for four grandchildren), 522 (April 2010 record indicating Ms. Edwards as primary caregiver of two-year old child during day)). *See Watson v. Astrue*, No. 5:11-CV-466-FL, 2012 WL 4026041, at *7 (E.D.N.C. Sept. 12, 2012) (unpublished) (holding that "plaintiff's care for her grandchildren helped discredit her allegations" of total disability); *see also Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (holding that claimant's daily activities were inconsistent with claims of inability to perform basic mental tasks as a result of pain medication). Second, in August 2010, Ms. Edwards reported moderate activity. (Tr. 425.)

---

14.) However, the ALJ specifically stated that she had "considered the impact of obesity, as discussed in Social Security Ruling 02-01p, *at each step of the sequential adjudication process*." (Tr. 82 (emphasis added).) *See Young v. Astrue*, No. 1:09CV1008, 2013 WL 474787, at *6-7 (M.D.N.C. Feb. 7, 2013) (unpublished); *Smith v. Astrue*, No. 10–CV–6018 (NGG), 2013 WL 1681146, at *4-5 (E.D.N.Y. Apr. 17, 2013) (unpublished). At one point or another, the ALJ also discussed, among other things, evidence related to Ms. Edwards' legs, knees, obesity, and pain in formulating the RFC. (Tr. 84-86.) *See McClain v. Colvin*, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (unpublished) ("As long as the ALJ determines that the claimant has at least one severe impairment and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless.") Additionally, Ms. Edwards has failed to demonstrate in any meaningful way her knees, legs, obesity, or pain related issues limit her beyond the scope of the ALJ's RFC or that the ALJ erred in any manner that could be prejudicial to her. For all these reasons, this argument lacks merit.

Third, the ALJ's decision is supported by the opinion of the state medical consultant, Dorothy Linster, M.D., who opined that Ms. Edwards is capable of performing light work with postural, manipulative, and environmental limitations no more restrictive than those found in the RFC determination. (*Id.* at 68-70, 86.) *See* 20 C.F.R. § 416.927(e) and SSR 96-6p, 1996 WL 374180 (July 2, 1996) (unpublished) (stating that the opinion of a non-examining state agency medical source, insofar as it is supported by evidence in the case record, is recognized as that of a highly qualified physician who is an expert in the evaluation of the medical issues in disability claims under the Act.); *see also Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986) (testimony of non-examining physician can be relied upon when consistent with the record).

Fourth, the ALJ specifically noted in her decision that one factor among many in her credibility determination was Ms. Edwards' "generally unpersuasive demeanor while testifying at the hearing" and the fact that her "responses while testifying were not persuasive, and her testimony was not supported by the record." (Tr. 86.) Observations such as this by an ALJ are generally entitled to deference. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (noting that the ALJ has the opportunity to observe the demeanor and to determine the credibility of the claimant).

Ms. Edwards' arguments to the contrary are not persuasive. First, she faults the ALJ for failing to discuss all the evidence in the record, including evidence regarding her

pain and reduced range of motion, and for failing to specifically mention all of the regulatory factors relevant to a credibility determination. (Doc. 11 at 1-11.) However, an ALJ is not required to specifically discuss each bit of evidence on the record or each regulatory factor. What the ALJ must do—and what the ALJ did do here—is take into consideration all the evidence and all the relevant factors and articulate an RFC and credibility determination supported by substantial evidence. Second, Ms. Edwards cites *Smith v. Astrue*, 457 Fed. App'x 326, 329 (4th Cir. 2011), for the proposition that her subjective complaints should receive great weight. (Doc. 11 at 9-10.) However, *Smith* itself holds that "great weight is afforded to subjective evidence when it is either uncontradicted or supported by substantial evidence." *Id.* As detailed at length above, Ms. Edwards' allegations of disabling pain are not well supported and are contradicted by the record. The treatment records, her daily activities, and the opinion of the state medical consultant amount to substantial evidence contradicting her subjective complaints insofar as they are inconsistent with the ALJ's RFC determination. Ms. Edwards has failed to demonstrate any reversible error by the ALJ regarding either her RFC or credibility.

**B. The RFC, As Presented to the VE, Is Supported by Substantial Evidence.**

Dr. Betty Aldridge, a state agency psychologist, filled out a Mental Residual Functional Capacity Assessment form ("mental RFC form") on Ms. Edwards. (Tr. 70-72.) The form required Dr. Aldridge to render preliminary conclusions in response to

each of twenty questions regarding Ms. Edwards' mental capacities, to render narrative conclusions at the end of each of the four sections of questions, and to set forth any additional narrative explanation at the end. (*Id.*) The assessment form specifically noted that while the twenty questions "help determine the individual's ability to perform sustained work activities" the actual mental RFC assessment "is recorded in the narrative discussion(s)." (*Id.* at 70.)

Ms. Edwards contends that the ALJ erred in not including Dr. Aldridge's answers to the twenty questions in her RFC and by failing to present them to the VE. (Doc. 11 at 12-14.) However, the ALJ was under no obligation to do this. *See, e.g.*, *Hayes v. Colvin*, No. 1:10-CV-379, 2013 WL 2456111, at *4-5 (M.D.N.C. Jun. 6, 2013) (unpublished); *Umeadi v. Comm'r, Soc. Sec. Admin., No. Civ.* SAG-12-0638, 2013 WL 1856413, at *2 (D. Md. Apr. 30, 2013) (unpublished); *Norris v. Astrue*, No. 7:07-CV-184-FL, 2008 WL 4911794, at *16 (E.D.N.C. Nov 14, 2008) (unpublished); *Bates v. Astrue*, No. 07-074-JJF, 2008 WL 1736819, at *11 (D. Del. Apr. 11, 2008) (unpublished); *Malueg v. Astrue*, No. 06-C-676-S, 2007 WL 5480523, *7 (W.D. Wis. May 30, 2007) (unpublished). Consequently, it is not error for an ALJ to fail to include each answer to the checklist questions portion of the mental RFC form in her RFC determination or hypothetical to the vocational expert. *See Umeadi*, 2013 WL 1856413, at *2.

**V. CONCLUSION**

The Commissioner's decision is supported by substantial evidence. Therefore, it

is **ORDERED** that Ms. Edwards' Motion for Judgment on the Pleadings (Doc. 10) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 12) is **GRANTED**, and the final decision of the Commissioner is upheld. A Judgment dismissing this action will be entered contemporaneously with this Order.

This 9th day of September, 2014.

_____
UNITED STATES DISTRICT JUDGE